IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDDIE LEE FOSTER, #143404,      )
                                      )
        Plaintiff,          )
                                      )
   v.                       )     CASE NO. 2:13-CV-288-WHA
                                      )          (WO)
                                      )
CYNTHIA DILLARD, et al.,       )
                                      )
        Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Eddie Lee Foster ("Foster"), an indigent state inmate. *Doc. No. 11* and *Doc. No. 19*.  In these pleadings, Foster challenges the five-year set off date assigned for his next parole consideration as violative of the Ex Post Facto Clause and asserts that a generic statement contained in the letter notifying him of the denial of parole created a liberty interest in being released on parole.  Foster also argues that the defendants deprived of his right to proper consideration for parole because they ignored the directives of a state statute requiring evaluation by a psychiatrist prior to determining his suitability for parole.  Foster next alleges that the actions of the defendants deprived him of due process, violated his equal protection rights and subjected him to cruel and unusual punishment.  Finally, Foster complains that the statute governing parole is unconstitutionally vague as it permits total discretion by parole board members in

determining which inmates to release on parole.  The defendants in this case are Cynthia Dillard, the Executive Director of the Alabama Board of Pardons and Paroles, and William Wynne, Jr. and Cliff Walker, members of the Alabama Board of Pardons and Paroles.  Foster seeks issuance of a declaratory judgment, injunctive relief and monetary damages.

The defendants filed a special report and supporting evidentiary materials addressing Foster's claims for relief.  In this filing, the defendants deny they acted in violation of Foster's constitutional rights during the parole consideration process and in making the determination to deny parole.  Upon receipt of the defendants' special report, the court issued an order directing Foster to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials. *Order of October 15, 2013 - Doc. No. 30* at 2.  This order specifically cautioned Foster that "the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law."   *Id*. 2-3.  Pursuant to this order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response and supporting

affidavit, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [parole] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence,

are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forthspecific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74thAvenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine

dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Foster has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. IMMUNITY

#### A. Official Capacity Claims

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134

L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Individual Capacity Claims

To the extent Foster seeks monetary damages from the defendants for actions relative to the parole consideration process and/or the denial of parole, he is likewise entitled to no relief.  This Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole.  *Fuller v. Georgia State Board of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101-02 (5th Cir. 1974).  All of the actions about which Foster complains arose during proceedings resulting in the denial of parole.  Under these circumstances, the challenged actions are inextricably intertwined with the decision-making authority exercised by the defendants and they are

therefore immune from damages.  Consequently, Foster's claim for monetary damages against the defendants in their individual capacities is due to be summarily dismissed.

## IV.  DISCUSSION OF CLAIMS

### A.  Material Facts

Foster is currently confined in the custody of the Alabama Department of Corrections on sentences of life imprisonment imposed upon him in 1986 for convictions of first degree robbery, first degree rape, first degree sodomy and first degree kidnapping. The parole decision relevant to Foster's claims occurred on September 12, 2012, when defendants Wynne and Walker voted to deny Foster parole.  *Exh. A to the Defendants' Special Report (Report of Action by the Board) - Doc. No. 26-2 at 3.*  The record demonstrates that the denial of parole occurred because the voting members of the Parole Board did not believe that Foster constituted an acceptable risk for release on parole. *Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 26-1 at 2-3; Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 26-3 at 2-3 (same).*  The board members scheduled Foster's next parole consideration for September of 2017.  *Exh. A to the Special Report (Report of Action by the Board) - Doc. No. 26-2 at 3.*

### B.  Due Process

Foster seeks relief for an alleged lack of due process afforded to him during the parole consideration process which resulted in the denial of parole on September 19, 2012.  Specifically, Foster alleges that the language in a letter provided to him by defendant Dillard upon a previous denial of parole which expressed the Board's "hope"

that he "will cooperate with the prison authorities in order that [he] may receive the best benefits accorded" created a liberty interest in being released on parole upon his cooperation with correctional officials. *Amended Compl. – Doc. No. 11* at 4. Foster also contends that defendants Wynne and Walker denied him due process when they failed to obtain a psychiatric evaluation for use in determining his suitability for release on parole as directed by state law. *Id*. at 3.

The defendants deny that the letter or state law creates a liberty interest in parole. The defendants argue that the language "'the Board hopes you will cooperate with the prison authorities in order that you may receive the best benefits that can be accorded'" that is in the body of the denial letter sent to <u>all</u> prisoners whose parole has been denied "does not create a right to parole or a liberty interest in being paroled." *Special Report - Doc. No.* 26 at 21-22. The court concludes that usage of the word "hopes" in the parole denial letter merely encourages prisoners to cooperate with prison authorities so that they "may" potentially receive those benefits available to them while incarcerated. Just as mandatory language in state statutes and prison regulations is insufficient to create a protected liberty interest, *see Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), the language in the letter of encouragement does not create a protected liberty interest in parole.

The defendants further contend that they complied with state law in reviewing Foster's psychological and mental health records available to them. The defendants advise that the applicable statute, *Ala. Code* §15-22-25(a), only requires the Board to

acquire soon after sentencing "**information as complete as may be obtainable**," including any existing available report on the prisoner's "**psychiatric condition and history**[.]" *Special Report - Doc. No. 26* at 22-23 (emphasis in original).  The defendants maintain that state law does not require the Board to consider a psychiatric evaluation where a report does not exist.  *Sellers v. Thompson*, 452 So.2d 460 (Ala. 1984); *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937 (11th Cir. 1987).   In *Sellers*, the Alabama Supreme Court determined that *Ala. Code* § 15-22-25(a) did not

> require a psychiatric evaluation of a prisoner before the Board may act on his request for parole. . . .  The statute [merely] requires the Board to obtain and file 'information as complete as may be obtainable.'  This statute also provides that when 'all such existing available records have been assembled,' they shall be presented to the Board or [its designee], who shall determine whether any further investigation is necessary.  Arguably, the statute could be read to authorize the Board, assuming it had the means to do so, to cause a psychiatric evaluation to be made, but that does not necessitate the conclusion that the Board members have violated the statute because they failed to order an evaluation.

452 So.2d at 463; *Ellard*, 824 F.2d at 947 (noting *Sellers* established that "statute does not require Parole Board to order a psychiatric evaluation where one does not exist."). The Alabama Supreme Court is the final authority on matters of state law.  *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("'State courts, not federal courts, should be the final arbiters of state law' in our federalist system.  *Baggett [v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)]."); *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995) (internal citation omitted) ("[S]tate law is what the state supreme court says it is, and a state supreme court's pronouncements are binding on every state and federal judge.").  The defendants

further argue that "[c]ontrary to Foster's contentions, his parole file contains a psychological report for the Board's review." *Special Report - Doc. No. 26* at 25. Both defendants Wynne and Walker state they studied Foster's parole file, including the psychological report, prior to determining his suitability for release on parole. *Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 26-1* at 1-2; *Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 26-3* at 1-2.

Foster's claim that state law required the Parole Board to obtain a psychiatric evaluation prior to considering him for parole is without merit. In addition, the only evidence properly before the court establishes that defendants Wynne and Walker reviewed all requisite records, which included a psychological evaluation, during the parole consideration process.

In response to Foster's claims challenging the decision to deny parole, defendant Walker states:

> . . . . [A]s a Member of the Alabama Board of Pardons and Paroles[,] . . . I . . . have the discretionary decision-making authority of whether or not to grant parole or deny parole during parole consideration hearings conducted in open public meetings.
> I am charged with the duty of personally studying prisoners so as to determine their ultimate fitness to be paroled. I did so in Eddie Lee Foster's case.
> On September 19, 2012, I voted to deny Eddie Lee Foster parole and to reset him for further parole consideration in five (5) years. I was not of the opinion that if Mr. Foster were granted parole at this time that he could remain at liberty without violating the law and that his release would be compatible with the welfare of society.
> I deny discriminating against [Eddie Lee Foster] on the basis of race or any other protected class or acting arbitrary[ily] and[/or] capricious[ly] when making my decision to deny Eddie Foster parole and to reset him for further parole consideration in September of 2017, a five (5) year set-off.

> I acted within my lawful, discretionary authority when denying Eddie Lee Foster parole on September 19, 201[2] and resetting him for further parole consideration in five (5) years.
>
> I deny violating Eddie Lee Foster's Eighth Amendment rights. I have no control or authority over prison conditions.
>
> I have in no way extended or increased the length or duration of Mr. Foster's LIFE sentence handed down by the courts when resetting him for further parole consideration in September of 2017. I acted in accordance with the Board's rules when setting him off for five (5) years until his next parole consideration. Under state law, the Board can promulgate rules dealing with parole eligibility docket dates.
>
> I deny violating <u>any</u> of Mr. Foster's federally protected rights during the parole consideration process.

*Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 26-1 at 1-3; Exh. 3 to the*

*Special Report (Aff. of William Wynne, Jr.) - Doc. No. 26-3 at 1-3 (same).*

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole. . . . When the statute is framed in discretionary terms there is not a liberty interest created. . . . Alabama parole statutes do not create a liberty interest [in parole]." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). This court's review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[3] The law is well settled that "the mere possibility of parole provides simply 'a

---

[3]Section 15-22-26 of the Alabama Code effective in September of 2012 governed the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates. The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but **only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released,**

hope that is not protected by due process. . . .'  . . .  [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole.  *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)."  *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).  The cursory language contained in the letter of denial regarding a "hope" of compliance with correctional officials so that an inmate "may" position himself to receive available benefits does not create a constitutionally protected interest in parole.

To the extent Foster contends that applicable statutes and regulations create a protected liberty interest in the procedures related to parole consideration, he is likewise entitled to no relief as this claim is foreclosed by *Slocum.*  In *Slocum*, the Eleventh Circuit deemed such a "unique theory . . . without merit."  678 F.2d at 942.  The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions . . . create a protectable entitlement to parole consideration.  Specifically, petitioner cites the requirement . . . that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language . . . that the board include in the parole file "as complete information as may be practically available. . . ."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless

---

*he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society*.  If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe....

*Ala. Code* § 15-22-26 (emphasis added).  The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

> there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] . . . allegation that the . . . parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 941-942.

As is clear from the foregoing, Foster does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Board of Pardons and Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489. Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process,

*Thomas*, 691 F.2d at 488-489, or the parole consideration process.  *Slocum*, 678 F.2d at

942 (failure to provide parole review within time required under parole rules or properly

calculate presumptive date of release on parole does not constitute a violation of due

process).

Nevertheless, even though there is no liberty interest involved, a parole board may

not engage in "flagrant or unauthorized action."  *Thomas*, 691 F.2d at 489.  Defendants

Wynne and Walker maintain they acted in accordance with the Constitution, federal law,

state law and applicable administrative regulations when they denied parole to Foster.

They also advise that the decision to deny parole was based on their determination that

Foster did not present an acceptable risk for release on parole.[4]  The decision of the

parole board members demonstrates a reasonable and appropriate action, *Hendking v.*

*Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state

interest of ensuring that only those inmates best suited for parole are actually granted this

privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v.*

---

[4]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted. *Ala. Code* § 15-22-24(a).  The law further gives the parole board total discretion in determining whether an inmate should be granted parole.  *Ala.Code* § 15-22-26 (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society[.]").  The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489.  As the findings set forth herein make clear, there has been no flagrant or unauthorized action by the parole board or its members warranting interference by this court.

*Hunt*, 852 F.2d 526 (11th Cir. 1988).  Foster has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its members.  Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Foster's due process claims.

### C.  Ex Post Facto

Foster challenges the retroactive application of administrative rules adopted after he began service of his current term of incarceration which altered the potential frequency of setting parole consideration dates from every three years to every five years. *Compl.- Doc. No. 1* at 3.  Foster argues that use of the amended rules implicates the protections guaranteed by the Ex Post Facto Clause of the United States Constitution.

The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000).  An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis.  *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000).  In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a

significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended Georgia rule increasing parole consideration hearings from every three years to every eight years violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

As previously determined, state law gives the Alabama Board of Pardons and Paroles total discretion in determining whether an inmate should be granted parole, *Ala. Code* § 15-22-26, "and when and under what conditions" parole will be granted, *Ala.*

*Code* § 15-22-24(a).  Applicable state law also requires that the parole board consider the public interest in every case.  *Ala. Code* § 15-22-26.  This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause.  *Garner*, 529 U.S. at 250.  The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id*. (internal quotation marks and citation omitted).

The applicable rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles.  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to "determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years.  The case will be considered again as near as practicable to the specified month and year."[5]  *Exh. 8 to the Special Report - Doc. No. 26-8* at 11.  Article 2, § 7 of these rules provides that, after a denial of parole, "the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or

---

[5]The initial operating procedure governing the scheduling of parole consideration dates for inmates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11.  The parole board retained the five-year set off in its later amendments to the operating procedures.

revoked parole."[6]  *Id*. at 6.  In addition, the opportunity for an expedited parole review is likewise available to those inmates who have served at least five years in prison as Article 2, § 1 of the rules and regulations directs that an inmate in this situation "may request once per calendar year [that parole officials] . . . review the inmate's progress to determine whether it may be appropriate to schedule earlier parole consideration.  Such a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the inmate is following the rules in prison."  Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.  *Garner*, 529 U.S. at 254-255.

The law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Foster nor increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Foster that he would be unconditionally released before completion of his life sentence.  Additionally, eighteen months after the denial of parole Foster retains the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for release on parole and, therefore, he could be scheduled for consideration at an earlier date.  Hence, even if risk of an increased term of incarceration develops in Foster's case, he may, upon a showing of "good cause . . . and circumstances bearing on his probability to succeed on

---

[6]The 2001 amendment to the regulation in Article 2, § 8 initially allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole as permitted by the subsequent amendments.

parole," seek an earlier review before the five-year reconsideration interval expires. Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*; *Exh. 8 to the Special Report - Doc. No. 26-8* at 5.

Foster has presented no evidence which demonstrates that the regulations at issue create a significant risk of increased punishment from that imposed for his rape conviction. Moreover, Foster possesses the ability to petition the parole board for an earlier parole consideration date. Based on the foregoing, the court concludes that the change about which Foster complains did not lengthen his actual term of imprisonment. Thus, Foster's challenge to the potential two year increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 F. App'x 261 (5th Cir. 2009) (Retroactive imposition by parole board of changes in parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural. . . . The [Texas Parole] Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070, 115 S.Ct. 1706 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by the parole board not violative of the Ex Post Facto Clause). The defendants are therefore

entitled to summary judgment on Foster's ex post fact challenge to the scheduling of parole consideration dates.

### D.  Cruel and Unusual Punishment

Foster contends that the denial of parole and subsequent five-year set off for subsequent parole consideration constituted cruel and unusual punishment.  *Amended Compl. - Doc. No. 11* at 4; *Amendment to Compl. – Doc. No. 19* at 1.  This claim entitles Foster to no relief.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id*. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  Neither a postponement of parole consideration nor the denial of parole rises to the level of an Eighth Amendment violation as either action is "merely a disappointment rather than a punishment of cruel and unusual proportions."  *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 933 (11th Cir. 1986).  Consequently, the defendants are entitled to summary judgment on this claim.

### E.  Equal Protection

Foster asserts that defendants Walker and Wynne exercised their "unbridled discretion" granted by state law to "discriminate based on race, ethnicity, class, financial and family status . . . violating this plaintiff['s] Constitutional Rights that is guaranteed."

*Compl. - Doc. No. 11* at 5.   The court construes this assertion as one alleging a violation of the plaintiff's equal protection rights.

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001).  Moreover, to succeed on an equal protection challenge, the plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application of rules, regulations, policies or statutes without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*,

851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Foster bears the burden of producing some probative evidence to show that the actions of defendants Wynne and Walker resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. Foster fails to meet this burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants, *Brunskill v. Boyd*, 141 F. App'x 771, 776 (11th Cir. 2005), or demonstrating that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason.  In short, Foster sets forth no facts in support of his allegation of an equal protection violation.  Even a liberal interpretation of Foster's *pro se* complaint does not reveal any factual basis for an equal protection claim.  Furthermore, it is clear from the undisputed evidentiary materials that the defendants refused to grant Foster parole based on their determination, after reviewing all relevant records, that he was not an acceptable candidate for release on parole.  *Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 26-1 at 1-3; Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 26-3* at 1-3.

In light of the foregoing, summary judgment is due to be granted in favor of the defendants on Foster's claim of unconstitutional discrimination.

## F.  Constitutionality of State Statute

Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society. . . .

*Ala. Code* § 15-22-26.  Foster complains that this section of the Alabama Code is unconstitutionally vague and arbitrary as it provides "unbridled discretion to the defendant[s]" and allows board members to make "predictions" about his further based on subjective beliefs.  *Amended Compl. - Doc. No. 11* at 5.

The statute challenged by Foster does not address constitutional freedoms or identify unlawful conduct but merely sets forth the standards members of the parole board must follow prior to granting an inmate parole.  Upon application of the void-for-vagueness doctrine, the court concludes that the challenged code section is not unconstitutionally vague.  "A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications.  *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).  The test is whether the enactment is substantially incomprehensible.  *Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den.*, *Exxon Corp. v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d

239 (1981)." *Woodruff v. United States Dept. of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 643, *rehearing denied*, 961 F.2d 224 (11th Cir. 1992).   The statute at issue is substantially comprehensible with respect to establishing the standards for release of inmates on parole.   The guidelines set forth in § 15-22-26 "provide explicit standards for those who apply them" and "give the person of ordinary intelligence a reasonable opportunity to know what is [required]."   *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972).   The mere fact the statute provides for utilization of discretion and reliance on personal opinion does not render it impermissibly vague or arbitrary.   As the Alabama Supreme Court determined:

> [The inmate] contends that § 15-22-26 is unconstitutionally vague on its face or as it is administered by the Board of Pardons and Paroles. "A statute that does not concern First Amendment freedoms or the definition of criminal conduct may be declared unconstitutionally vague 'only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute's language.' *Friday v. Ethanol Corp.*, 539 So.2d 208, 213 (Ala.1988)." *State v. Blake*, 642 So.2d 959, 962 (Ala.1994). Section 15-22-26 is a typical parole statute that gives the parole board total discretion in the granting of paroles. *Tedder v. Alabama Bd. of Pardons & Paroles*, 677 So.2d 1261, 1263 (Ala.Crim.App.), *cert. denied*, 518 U.S. 1008, 116 S.Ct. 2531, 135 L.Ed.2d 1054 (1996); *see also Thomas v. Sellers*, 691 F.2d 487, 488-89 (11th Cir. 1982).   Because the statute provides that parole may be granted at the board's discretion, it does not confer a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. E.g., *Tedder,* 677 So.2d at 1263. The discretion granted to the parole board by § 15-22-26 does not, however, make the statute vague; rather, it gives the board the authority to consider each parole application individually. Section 15-22-26 . . . is not unconstitutionally vague on its face or as it is administered by the board; [the inmate's] contentions are meritless.

*Thompson v. Board of Pardons and Paroles*, 806 So.2d 374, 375 (Ala. 2001).

The Alabama parole statute governing standards for parole of inmates is a typical parole statute which vests total discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.   There is nothing unconstitutionally vague about the statute.   Moreover, the Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."   *Thomas*, 691 F.2d at 489.

### G.  State Law Claim

To the extent Foster asserts that the actions of the defendants violated state law, review of this claim is appropriate only upon utilization of this court's supplemental jurisdiction.   The court's exercise of supplemental jurisdiction over the remaining state law claims is discretionary.   Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction . . . ."   The court's discretion is advised by *Untied Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.   Certainly, if the

federal claims are dismissed before trial, even though not insubstantial
in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726.  And, in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), the

Supreme Court reiterated that "when the federal-law claims have dropped out of

the lawsuit in its early stages and only state-law claims remain, the federal court

should decline the exercise of jurisdiction by dismissing the case without prejudice

. . . "    Accordingly, the court concludes that the state law claims should be

dismissed without prejudice.

### V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  Foster's federal claims be DISMISSED with prejudice.

4.  Foster's state law claims be DISMISSED without prejudice.

5.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 26, 2016 the parties may file objections to this

Recommendation.   A party must specifically identify the factual findings and legal

conclusions in the Recommendation to which the objection is made; frivolous,

conclusive, or general objections will not be considered.  Failure to file written objections

to the Magistrate Judge's findings and recommendations in accordance with the

provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 12th day of April, 2016

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE